Case 4:20-cv-04297   Document 7   Filed on 07/28/21 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
July 28, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| USA PROMLITE TECHNOLOGY INC., | § | |
| | § | |
| Appellant, | § | Civil Action No. H-20-4297 |
| | § | Bankruptcy No. H-19-3331 |
| v. | § | |
| | § | |
| CITY OF HIDALGO, | § | |
| | § | |
| Appellee. | § | |

**MEMORANDUM AND ORDER**

The City of Hidalgo, Texas, contracted with USA Promlite Technology, Inc. to have Promlite install energy-efficient lighting in City-owned facilities and spaces. Promlite sued the City for breach of contract, and America First National Bank intervened to assert its security interest in the contract. Promlite removed to the bankruptcy court, and the City moved to dismiss for lack of subject-matter jurisdiction. The bankruptcy court granted the motion and dismissed Promlite's claims against the City. Promlite and America First have timely appealed.

Based on the briefs, the record evidence, and the applicable law, the court: (1) affirms the bankruptcy court's conclusion that the City acted in a governmental capacity in contracting with Promlite; (2) based on case law from the Fifth Circuit after the bankruptcy court ruled, reverses the bankruptcy court's conclusion that § 271.156 of the Texas Local Government Code prevents the City from waiving its immunity in federal court; and (3) remands for consideration of whether the City waived its immunity.

The reasons for these rulings are explained below.

**I.   Background**

In November 2013, the City contracted with Promlite to install new lights in City buildings,

streets lamps, parking lots, and other City-owned spaces. (Docket Entry No. 2 at 44). The City agreed to pay Promlite 90% of the money that it saved because of the energy-efficient lighting over seven years. (*Id*. at 44–45). The contract cost Promlite approximately $2,800,000 to perform. America First loaned Promlite $1,800,000 and took a security interest in the contract between Promlite and the City. (*Id*. at 46, 110).

In February 2016, Promlite sued the City for breach of contract in Hidalgo County district court, alleging that the City neither paid nor reported maintenance and energy-use information to Promlite, as the contract required. (*Id*. at 47). America First intervened in December 2016 to advance its security interest in the contract. (*Id*. at 105).

In December 2018, Promlite filed for bankruptcy in the Southern District of Texas. (Docket Entry No. 1 at 8). In March 2019, Promlite removed to the bankruptcy court. (*Id*.). In September 2020, the City moved to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. (*Id*.). The bankruptcy court granted the motion and dismissed Promlite's claims. Promlite and America First timely appealed. (Docket Entry No. 1).

## II. The Legal Standard

"[T]raditional appellate standards" apply to a district court's review of a bankruptcy court's order under 28 U.S.C. § 158(a). *Stern v. Marshall*, 564 U.S. 462, 475 (2011). This court reviews the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. *See, e.g.*, *In re Ahern Enters., Inc.*, 507 F.3d 817, 820 (5th Cir. 2007); *In re Barron*, 325 F.3d 690, 692 (5th Cir. 2003); *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003). Under clear error review, the district court may set aside a factual finding of the bankruptcy court if a review of the evidence leaves the court with "the definite and firm conviction that a mistake has been committed." *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003); *In re Williams*, 337 F.3d 504, 508–09 (5th Cir. 2003).

**III.     Analysis**

Under Texas law, a state or local governmental entity is immune from suit if it is "acting as the State's agent and performing governmental functions for the public benefit." *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 433 (Tex. 2016) (*Wasson I*) (citation omitted); *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 58 (Tex. 2011) ("'Sovereign immunity,' protects the state and its various divisions . . . from suit and liability, whereas 'governmental immunity' provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts."). The governmental entity may waive that immunity, including when it enters into contracts. *See* TEX. LOC. GOV'T CODE § 271.152. But § 271.156 of the Texas Local Government Code provides that, even if a governmental entity waives its immunity, that waiver does not extend to lawsuits in federal court.

The bankruptcy court concluded that the City acted in its governmental capacity when it contracted with Promlite, which triggered immunity from suit. The bankruptcy court also concluded that § 271.156 prevented the City from waiving its immunity in a federal court lawsuit, which prevented the bankruptcy court from exercising subject-matter jurisdiction. (Docket Entry No. 1-1 at 16). On appeal, Promlite argues that the City was not acting in a governmental capacity and that § 271.156 did not deprive the bankruptcy court of subject-matter jurisdiction. The court addresses each argument in turn.

**A.     Whether the City Acted in a Governmental Capacity**

Promlite argues that the City did not act in a governmental capacity when it entered into the light-replacement contract, because replacing a lighting system is not an essential governmental function. (Docket Entry No. 4 at 15). The City argues that replacing the lighting system at issue is an essential governmental function because the lights are related to the operation

3

and maintenance of City facilities. (Docket Entry No. 5 at 9).

Texas law defines "governmental functions" as "those functions that are enjoined on a municipality by law and are given to it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." TEX. CIV. PRAC. & REM. CODE § 101.0215(a). Those functions include "street maintenance," "parks," "libraries and library maintenance," "convention centers," and "parking facilities." *Id*. at §§ 101.0215(a)(4), (13), (15), (16), and (25). Proprietary functions, by contrast, are defined as "those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality," such as functions related to "the operation and maintenance of a public utility." *Id*. at § 101.0215(b).

Whether the City performed a governmental or a proprietary function when it contracted with Promlite depends on whether: (1) entering into the contract was mandatory or discretionary for the City; (2) the contract was intended to benefit the general public or the City's residents; (3) the City was acting on its own behalf or on behalf of the state; and (4) entering into the contract was "sufficiently related to a governmental function to render the act governmental even if it would otherwise have been proprietary." *Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 150 (Tex. 2018) (*Wasson II*).

### 1. Whether the Contract was Discretionary

The bankruptcy court concluded that because there was "no evidence in the record that updating the lighting system was mandatory," the City voluntarily entered into the contract, which weighed in favor of finding that the City acted in a proprietary capacity. (Docket Entry No. 1-1 at 21). The court agrees. *See Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697 (Tex. 2019) (a city's decision to contract with a private group to raise money for bridge

4

conservation was proprietary).

### 2. Whether the Contract was Intended to Benefit the General Public

Governmental functions typically benefit the general public, while proprietary functions generally benefit a city's own residents. *See Wasson I*, 489 S.W.3d at 430 ("When a city performs discretionary functions on its own behalf, it ceases to derive its authority—and thus its immunity—from the state's sovereignty. Such proprietary functions, therefore, do not stem from the root of immunity that is 'the people,' and lacking that common root, they cannot be performed as a branch of the state."); TEX. CIV. PRAC. & REM. CODE § 101.0215(a). The bankruptcy court found that the light-replacement contract benefited both the general public and the City's residents, making this factor "a tossup and thus neutral." (Docket Entry No. 1-1 at 22).

The light-replacement contract affected City-owned spaces used by both City residents and the general public, and it benefited both groups. *See Hays St. Bridge,* 570 S.W.3d at 706 (a bridge-restoration project was for the general public because it was restored "for the enjoyment and education of [the city's] residents and visitors"). Because the City entered into the contract to save energy costs, its residents may benefit slightly more than the general public, but that additional benefit is amorphous and undefined, at best. The record supports the bankruptcy court's conclusion that "identifying which party primarily benefits is too close of a call." (Docket Entry No. 1-1 at 21). This factor is neutral.

### 3. Whether the City was Acting on Its Own Behalf

The bankruptcy court concluded that, "although a close call," this factor weighed in favor of finding that the City performed a governmental function by contracting with Promlite because it did so voluntarily; operating City facilities is a governmental function; and those facilities need lighting. (Docket Entry No. 1-1 at 22).

The standard for determining whether a governmental entity acted on its own behalf or on behalf of the state is not clear. The Texas Supreme Court in *Wasson II*, 559 S.W.3d at 152, stated that "governmental actions are those in which a city acts as a 'branch of the state' or an 'arm of the government.'" (internal citations omitted). That case held that the city acted on its own behalf in leasing property because the decision "was entirely discretionary and primarily benefited the [c]ity's residents" and there were "no facts to counter" the conclusion. *Id.* One year later, in *Hays St. Bridge*, 570 S.W.3d. at 706 & n.49, the Texas Supreme Court concluded that a city acted on behalf of the State of Texas in entering an agreement for a bridge-restoration project because the Texas Department of Transportation funded 80 percent of the project.

The City paid for the light-replacement project and its decision to contract with Promlite was discretionary, (Docket Entry No. 2 at 69), which weigh in favor of finding that the City acted on its own behalf. But the light-replacement contract benefitted people outside the City's "corporate limits," which means that the City acted as an "arm of the government." *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006). This makes the City's decision to contract a governmental function. *Wasson II*, 559 S.W.3d at 152 (citing *Tooke*, 197 S.W.3d at 343). Although close, the record supports the bankruptcy court's conclusion that the City acted on behalf of the state. This factor weighs in favor of finding that the City acted in its governmental capacity.

### 4. Whether the Contract was Sufficiently Related to a Governmental Function

This factor considers whether the City's act was sufficiently related to a governmental function as to make it governmental, even if it would in other respects be proprietary. *Id*. at 154. Not all activities "associated" with governmental functions are "governmental," and the fact that a city's proprietary function "touches upon" a governmental function does not make it governmental. *Id*. Rather, a city's proprietary act can be treated as governmental only if it is

essential to the city's governmental actions. *Id*.

The bankruptcy court compared this case to *Triple BB, LLC v. Vill. Of Briarcliff*, 566 S.W.3d 385 (Tex. App.—Austin 2018, pet denied.). In that case, the court concluded that upgrading a water-treatment plant was a governmental function because it was essential to the city's provision of water and sewer service. *Id*. at 393–94. The bankruptcy court reasoned that lighting is similarly necessary for numerous city facilities to operate, which supported finding that the City's contract with Promlite was governmental, not proprietary. (Docket Entry No. 1-1 at 22).

Again, the record supports the bankruptcy court's conclusion. Although, as Promlite argues, "the City's desire to save on its expenditures reflect that it entered into the [c]ontract for its own behalf," (Docket Entry No. 4 at 14), Texas courts have held that acts or activities may be governmental functions regardless of a city's motive for engaging in them. *See Texas River Barges v. City of San Antonio*, 21 S.W.3d 347, 356–57 (Tex. App.—San Antonio 2000, pet. denied) (a city's removal of a barge company from a marina was included within the governmental function of operating a park, even if the removal was motivated by a desire to protect the city's profits). The bankruptcy court concluded that the governmental functions of operating and maintaining the City's facilities included the lighting of those facilities. *See* TEX. CIV. PRAC. & REM. CODE § 101.0125(a). The record evidence supports the conclusion that maintaining the lighting systems of the facilities was essential to the operation of those facilities, making the light-replacement contract sufficiently related to a government function.

Based on the balance of the *Wasson II* factors, the court agrees with the bankruptcy court's conclusion that the City acted in its governmental capacity in contracting with Promlite.

**B.    Whether § 271.156 Prevents Waiving Governmental Immunity**

Because the City acted in its governmental capacity, it is immune unless it waived its

immunity. *Wasson I*, 489 S.W.3d at 432, 435. The bankruptcy court did not decide whether the City had waived its immunity, because it concluded that, even if the City had done so, Texas law would not apply that waiver in federal court. *See* TEX. LOC. GOV'T CODE § 271.156. Promlite argues that the bankruptcy court's conclusion was error.

When the bankruptcy court issued its ruling, case law supported its application of § 271.156. *See, e.g., Smith v. Hous. Indep. Sch. Dist.*, 229 F. Supp. 3d 571, 576, 582 (S.D. Tex. 2017), *judgment entered*, No. 16-401, 2017 WL 238263 (S.D. Tex. Jan. 17, 2017), *abrogated by Tercero v. Texas Southmost Coll. Dist.*, 989 F.3d 291 (5th Cir. 2021); *Nationwide Pub. Ins. Adjusters Inc. v. Edcouch-Elsa I.S.D.*, 913 F. Supp. 2d 305, 310–12 (S.D. Tex. Dec. 20, 2012), *abrogated by Tercero*, 989 F.3d 291.

While this appeal was pending, the Fifth Circuit concluded that § 271.156 does not bar suits against a municipality in federal courts, because such an entity "cannot condition its waiver of immunity on a suit being brought in any forum other than a federal forum." *Tercero*, 989 F.3d at 298. The Fifth Circuit stated that, "in the absence of constitutional sovereign immunity, a governmental entity cannot bar a federal court from exercising jurisdiction over claims that state courts would recognize and enforce," and that "[f]ederal jurisdiction cannot be defeated by a state statute limiting the forum in which the action must be brought." *Id*. at 297 (quotation marks omitted).

The bankruptcy court did not have the benefit of *Tercero* when it ruled, and it did not consider whether the City had waived its immunity. That part of the bankruptcy court's ruling is reversed, and this case is remanded for the court to consider whether the City waived its immunity to this suit.

## IV. Conclusion

The bankruptcy court's conclusion that the City acted in its governmental capacity in contracting with Promlite is affirmed. The bankruptcy court's conclusion that § 271.156 of the Texas Local Government Code prevented Promlite from pursuing its claims against the City is reversed, and this case is remanded for further consideration of the immunity issue.

SIGNED on July 28, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge